I .WALTZER, Judge.

STATEMENT OF THE CASE

On 29 March 1996, appellant Leroy Jackson was charged by bill of information with attempted murder and possession of a firearm by a convicted felon. On 17 December 1996, a jury found him guilty of the possession charge. On 30 December 1996 he was sentenced to ten years at hard labor without benefit of probation, parole or suspension of sentence and fined one thousand dollars, which fine was suspended. The defendant then pled guilty to the attempted murder charge. He was sentenced on the attempted murder charge to ten years at hard labor without benefit of probation, parole or suspension of sentence, to run concurrently with the sentence on the possession count and any other sentences he might be serving.
On October 31, 1997, the appellant was granted an out-of-time appeal.

STATEMENT OF THE FACTS

On 13 March 1996, David Thomas was living with his then girlfriend, Vera Williams, and her two children at 2654 Tonti Street. Thomas knew Williams’s former boyfriend, defendant Leroy Jackson, because they both worked at the New Orleans Convention Center. At noon on this date, Thomas was cleaning his boots when Williams told him she had gotten a call from Jackson. He asked Williams what she was going to do about it, apparently referring to the defendant’s contin *389 ued calling. Thomas went inside to discuss the matter with her. About five or ten minutes later, Thomas was shot as he was walking out the front door.
Thomas testified that he saw a blue car and, with his peripheral vision, thought he saw Jackson outside after he was shot. He estimated that he was ninety percent sure that it was |2Jackson he saw. He gave the police the defendant’s name rather than a description. Vera Williams and her daughter, Catina Williams, ran out to assist Thomas. Vera Williams then called the police. Paramedics arrived shortly afterward and transported Thomas to the hospital.
Vera Williams testified that she ran to the side window and saw a blue car, but did not see anyone. She acknowledged that since the incident she had broken up with Thomas; however, she denied having resumed a relationship with the defendant. She further denied telling the police and a district attorney that she saw the defendant with a gun in his hand after the shooting. Catina Williams, like her mother, also denied telling the police that she saw the defendant outside with a gun after the shooting.
Officer Edward Cooper was the first officer at the scene after the shooting. He is both a registered nurse and a police officer, so he began to administer first aid before the paramedics arrived. He testified that he spoke separately to Vera Williams, and then to her daughter Catina. As a result of these interviews, he prepared an application for a warrant to arrest the defendant. However, on his way to get the warrant signed by a judge, Officer Cooper observed a car matching the description given by the witnesses at the shooting scene. The car was occupied by two men. Officer Cooper circled the block and came up behind the car, after calling for back up.
When the defendant observed the police officer behind him, he stepped out of the driver’s side. Officer Cooper told him to get back into his car and stay there. Officer Cooper then walked up to the driver’s side of the car and asked the defendant his name. The defendant identified himself. Officer Cooper advised him that he was under arrest for attempted murder. When the officer looked into the car, he saw the barrel of a gun protruding from beneath the driver’s seat. Officer Cooper removed the defendant from the car, then picked up and confiscated the gun. Upon his arrest, the defendant denied any knowledge of the shooting and stated that he gets blamed every time something happens. When asked if he knew the witness to the shooting, he replied “Yeah, that’s my old lady.”
Officer Joel Sylve arrived at the arrest scene for back up. He then went to the shooting scene and picked up Catina Williams, who identified the defendant as the person who shot the victim. She further identified the car defendant was driving as the one the defendant got into after the shooting. The officers seized a gun and gun clip from the defendant’s car. The gun clip ^contained five live rounds of .45 caliber ammunition.
Officer Sylve testified that both Vera and Catina Williams told him that they saw the defendant with a gun in his hand after the shooting. They also both described the car which the defendant entered after the shooting.
Officer Errol Augustine also testified that both Vera and Catina Williams told him that after they heard the gunshot, they looked out the door and saw the defendant with a gun in his hand, then saw him get into a blue vehicle and drive away. Like Officer Cooper, Officer Augustine noted that he interviewed the witnesses separately.
Officer Luther Randall identified a spent pellet retrieved from the closet floor. Officer Kenneth Leary was accepted as a ballistics expert. He testified that the bullet retrieved by Officer Randall was fired from the gun retrieved from the defendant’s car.
*390 Officer Sylve testified a second time to rebut Catina Williams’s testimony that she only identified the defendant at the arrest scene by name, not as the shooter. Officer Sylve testified that she identified him at the arrest scene as the shooter in the prior incident.
Tara Lee testified that she works in the visiting area of the correctional center. She testified and pulled up a computer record which contradicted Vera Williams’s claim that she had no ongoing relationship with the defendant.
Laura Schneidau, an assistant district attorney, testified that she interviewed David Thomas and Vera Williams at her office shortly after the incident. Thomas told her that he saw the defendant in the car after the shooting. Williams told her that she saw the defendant outside of the house immediately after the shots were fired, then saw him get into the passenger side of the car. Schneidau did not specifically ask Williams if she saw the defendant holding a gun. However, Schneidau noted that it is her practice to go over the police report with the witnesses and note any dissimilarities. Williams did not tell her that she did not see the defendant with a gun. Rather, Schneidau noted only that Williams saw him in the passenger seat with someone else driving.
The defense stipulated and the jury was advised that the defendant was convicted of one of the felonies listed in La. R.S. 14:95.1, the statute which defines the crime of being a convicted felon in possession of a firearm.
| ¿The defense called one witness, who failed to appear in court. The defense then rested.

ERRORS PATENT REVIEW

The bill of information lists the attempted murder charge as count one and the felony-firearm charge as count two. The minute entry from 30 December 1996, the date of the sentencing, indicates that the defendant was sentenced to ten years at hard labor, without benefit of probation, parole or suspension of sentence on each count, to run concurrently. In addition, the court imposed a fine on count one.
On 80 October 1997, the court corrected the minute entry of 30 December 1996 to reflect that the defendant pled guilty to count two. That entry also restates the sentences as indicated in the original minute entry. In fact, the appellant was found guilty in count two, the possession charge, and thereafter pled guilty to count one, the attempted murder charge. In addition, it is the felony-firearm offense, count two, which requires the imposition of a fine. The sentencing transcript is not in the appeal record. However, it was in the record when appellant counsel reviewed it. Counsel failed to note any illegality of sentence. Rather, in the statement of the case of appellant’s brief, counsel stated that the sentence with the fine applied to the felony-firearm count, and the other sentence applied to the attempted murder count. Accordingly, we believe that the sentences were merely confused in the minute entries, and the court properly sentenced the defendant in count one, for attempted second-degree murder, to ten years at hard labor without benefits, and in count two, for the possession of a firearm by a convicted felon, to a concurrent ten-year sentence without benefits, and imposed a fine, suspended. Both sentences are thus legal.

ASSIGNMENT ONE

The appellant avers that the trial court erred by allowing the jury to hear evidence of other crimes. The appellant argues both that the trial court failed to evaluate the nature of the other crimes evidence prior to its admission and that, in the absence of the other crimes evidence, there is insufficient evidence to convict the appellant of weapon possession.
LSA-C.Cr.P. art. 770(2) provides for a mistrial, upon a motion by the defendant, if a remark by the judge, district attorney or other court official makes reference within the hearing of the jury to another *391 crime alleged to have been committed by the defendant, which evidence is lfinot otherwise admissible. In State v. Prieur, 277 So.2d 126, 130 (La.1973), the court noted the requirement for pre-trial consideration of other crimes evidence; a procedure which was codified in La. C.E. art. 404 subd. B(l). The court in Priewr held that before the State may use other crimes evidence, it must show that the evidence “is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant’s bad character or his propensity for bad behavior, and that it serves to actual purpose for which it is offered.”
In the instant case, the appellant was stopped by Officer Cooper because his car matched the one described by witnesses to a shooting. The defendant was sitting in the driver’s seat when the officer stopped the car. There was another person in the subject car, in the passenger seat, when it was stopped. A witness to the shooting identified the defendant as the shooter. A gun was found protruding from the driver’s seat. The pellet found at the location of the shooting was fired from the gun found under the driver’s seat. The defendant stipulated that he had been convicted of a prior offense enumerated in La. R.S. 14:96.1. The evidence relative to the attempted murder was relevant and essential to indicate that the defendant knew that the gun was under his seat and intended to possess it. The necessity of this testimony is highlighted by trial counsel’s questions which suggested that the gun could have belonged to the passenger of the car or its owner.
Considering the relevance and essential nature of the other crimes evidence, the court correctly found it admissible at the Priewr hearing. It was emphasized at trial only because the State’s eyewitnesses to the shooting recanted their earlier report in their trial testimony. However, the officers were permitted to explain why they stopped the subject car and arrested the defendant on the shooting charge. The State further proved that the primary eyewitness had reconciled with the defendant by evidence that she had visited him in prison, thus explaining why the officer stopped the car and arrested the defendant, when those actions were inconsistent with the eyewitnesses’ testimony.
This assignment is without merit.

ASSIGNMENT TWO

The appellant avers that the trial court erred by denying the defense motion for mistrial after the prosecutor indirectly referred to Jackson’s failure to testify.
[ fiLSA-C.Cr.P. art. 770, in pertinent part, provides that, upon motion of a defendant, a mistrial shall be ordered when a remark or comment made within the hearing of the jury by the district attorney during the trial or in argument refers directly or indirectly to the failure of the defendant to testify in his own defense.
When there is an indirect reference to the defendant’s failure to take the stand and testify, the court determines the remark’s intended effect on the jury. State v. Bourque, 622 So.2d 198 (La.1993); State v. Bowman, 95-0667 (La.App. 4 Cir. 7/10/96); 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400. For such an indirect reference to mandate a mistrial, the State must have intended to draw the jury’s attention to the defendant’s failure to testify. State v. Clay, 612 So.2d 266 (La.App. 4 Cir.1992).
In closing argument, the district attorney in the instant case said: “Leroy Jackson (the defendant) is not saying he wasn’t there at the scene, because he was. So this fingerprint issue is a red herring.” Defense counsel objected and asked to approach. The following sidebar followed:
BY MR. VICKNAIR:
I would like to ask for a mistrial. The DA said that Mr. Jackson is not saying he wasn’t at the scene of the crime. Essentially he’s saying - he’s alluding to the fact that Mr. Jackson did not testify in this matter.
BY THE COURT:
*392 What I intend to do is admonish the jury to disregard the last remark made by the State, to disregard that remark. And, again, the defendant need not testify. He does not have to anyways (sic) explain or give any kind of reason for anything that happened here. It is incumbent upon the State to prove their case and instruct the State not to make any other references in any way, form or fashion to the defendant not taking the stand and testifying.
BY MR. GROOME:
To perfect the record, the State is alleging that the Defense, with regard to fingerprints, not explaining that he was arrested, that he was not there at the scene. The defense attorney is representing that has been the whole defense today, he' was not there at the scene. He was not in possession.
BY MR. VICKNAIR:
We haven’t presented any evidence -
BY MR. GROOME:
By cross-examining my witness.
BY THE COURT:
I agree with that. However, Mr. Groome, I am going to instruct you not to make any other further reference to the defendant not explaining his presence or his whereabouts. Of course, you can make some reference to what happened in |7the case, the fact that the defendant was arrested, where he was and allegedly where he wasn’t, the circumstances under which he was arrested. Very well.
After all parties returned to open court, the trial resumed as follows:
BY THE COURT:
Ladies and gentlemen, before Mr. Groome continues his argument I am going to caution you again that the defendant in this case, Mr. Jackson, does not in any way have to explain or testify. There is no obligation on Mr. Jackson’s part to take the stand and testify or in any other fashion explain anything. The burden of proof in this case is on the State of Louisiana to prove to you satisfaction and beyond a reasonable doubt that the defendant, in fact, committed the offense. The defendant has no burden of proof whatsoever. That includes no obligation on his part to explain or to testify about anything.
At this point, the district attorney was permitted to continue with his closing argument, during which no other objections were made.
While it is difficult to determine the intent of the prosecutor’s reference from the single excerpt provided by the court reporter and without the defense argument to which it responds, the context of the reference can be assumed from the comments of the prosecutor and the court at the sidebar. The prosecutor appears to be responding to defense counsel’s argument about the lack of fingerprints. The prosecutor further attempts to explain that this lack of fingerprints is a red herring because the defendant was arrested in the car in which the gun was found; unlike those cases in which prints are lifted from a gun or other surface to aid in the identification of the perpetrator. Accordingly, as in State v. Clay above, the prosecutor did not intend to draw the jury’s attention to the defendant’s failure to testify. Nor is it likely that this reference affected the jury’s verdict. Accordingly, any error from this reference is harmless.
CONCLUSION
We affirm the conviction and sentence.
AFFIRMED.