677 So.2d 1094 (1996)
STATE of Louisiana
v.
Derrick BOWMAN.
No. 95-KA-0667.
Court of Appeal of Louisiana, Fourth Circuit.
July 10, 1996.
*1096 Harry F. Connick, District Attorney, Giustina L. Persich, Assistant District Attorney, New Orleans, for State.
Archie B. Creech, Orleans Indigent Defender Program, New Orleans, for Defendant.
Before BYRNES, ARMSTRONG and WALTZER, JJ.
BYRNES, Judge.
Derrick Bowman appeals his conviction for manslaughter and his sentence of thirty-three years at hard labor. We affirm.
On August 29, 1993 the defendant Derrick Bowman, Terrance Simon, Keenan Ward, and Sylvester Brown went to the home of Kesha Carmouche at 1722 Sixth Street. While Derrick Bowman went to her door and knocked, the victim Carnel Preston and Rashan Jones arrived. Preston asked Bowman for whom he was looking. When no one answered the door, Bowman and the other three left. Bowman was driving the vehicle, and Terrance Simon was sitting in the front-seat passenger side. At the corner, in response to a request from Terrance Simon, Bowman turned the car around. Bowman stopped the car by Preston's car. Terrance Simon said something and then began shooting. Preston was struck by two bullets. One of the bullets entered his upper back, travelled through his lung, and lodged in his heart. When officers arrived at the scene, they found four nine millimeter casings near the victim's body and bullet holes in Preston's car.
Rashan Jones and Keenan Ward testified that no fight or verbal altercation occurred between Bowman and Preston or between Terrance Simon and Preston. However, in his post-arrest statement, which was read to the jury, Bowman stated that Preston and Terrance Simon were "fussing." According to Bowman's statement, after he drove off, Terrance Simon pulled a gun from under his shirt and told him to turn back. Fearful that Terrance Simon would shoot him, Bowman complied. Terrance Simon and Preston again began "fussing." When Preston ran to his car as if he were going to obtain a gun, Terrance Simon began shooting.
Keenan Ward testified that he did not see Terrance Simon with a gun and that no one knew he had one. Keenan Ward indicated that he could not remember if Bowman had slowed or stopped the car prior to the shooting but admitted that in his statement to the police, he stated that the vehicle was stopped. In that same statement, Keenan Ward told the police that, after the shooting stopped, Bowman asked Terrance Simon what was wrong with him. Ward testified that there was no conversation between Bowman and Terrance Simon except for Simon's instruction to Bowman to turn the vehicle around.
The defendant Derrick Bowman and his codefendant, Terrance Simon, were indicted for second degree murder, a violation of La. R.S. 14:30.1. On motion of defendant Bowman, his trial was severed from that of Terrance Simon.[1] On December 14, 1994, the twelve-person jury returned a responsive verdict of guilty of manslaughter. On January 10, 1995 the defendant was sentenced to thirty-three years at hard labor. His appeal followed.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1
Initially the defendant contends that the trial court erred when it allowed the prosecutor during closing argument to make a direct reference to the defendant's failure to testify.
Louisiana La.C.Cr.P. art. 770 provides:
Art. 770. Prejudicial remarks; basis of mistrial *1097 Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
The trial court is required to declare a mistrial when the prosecutor directly or indirectly refers to the defendant's failure to testify. However, a direct reference mandates a mistrial whereas an indirect reference permits the court to inquire into the remark's intended effect on the jury. State v. Johnson, 541 So.2d 818 (La.1989).
In State v. Fullilove, 389 So.2d 1282, 1283 (La.1980), the prosecutor stated:
... That is why the evidence was not introduced. The State's case is clear and simple. I really cannot add any more. The only thing that I would like to tell you is that at every phase of these proceedings, this man has been afforded his constitutional right. He has been afforded the right not to take the stand. He has been afforded the right that he has an attorney appointed for him if he can't afford one. His constitutional rights
The Louisiana Supreme Court held that the prosecution's argument included a direct reference to the defendant's failure to testify. Thus, even though the reference may have been only for the purpose of enumerating the defendant's constitutional rights, a mistrial was warranted.
In State v. Reed [and William Riley], 483 So.2d 1275 (La.App. 4 Cir.1986), William Riley argued that the prosecutor made a direct reference to his failure to testify. This court reviewed the following statements in the prosecutor's closing argument:
Now the presumption of innocence that the defendant's [sic] do not have to take the stand. William Riley did not take the stand and that is the way the law is and there is a good reason why the law is ...

Id., 483 So.2d at 1276.
This court held that the reference was direct and that the trial court erred in failing to declare a mistrial.
In the present case, during rebuttal argument, the prosecutor stated:
Now during jury selection we talked a lot about the defendant's rights. We talked about the right that he had that he is presumed innocent at the outset. And we talked about the right that every defendant has that he doesn't have to take the stand in his own defense. And that can't be held against amount (sic). But what we didn't talk about were victim's rights. Victim's rights to be free from getting shot in the back.
At this point, the defense counsel made an objection which was overruled by the trial court. The prosecutor continued with her argument as follows:
Of course, Carnel Preston can't take the stand, and it is not because of a Fifth Amendment privilege, he can't take the stand because he's dead.
In the present case the assistant district attorney referred to defendants in general in stating: ... "we talked about the right that every defendant has that he doesn't have to take the stand in his own defense." The prosecutor also referred to the victim's lack of rights, including the fact that the victim "Carnel Preston can't take the stand."
If there is an indirect reference to the defendant's failure to take the stand, the court determines the remark's intended effect on the jury. State v. Bourque, 622 So.2d 198 (La.1993). In the present case, in his argument the prosecutor was focusing on the lack of the victim's rights, and the prosecutor's comments were not intended to focus the jury's attention on the defendant's failure to testify.
*1098 Furthermore, violation of the statute requiring a mistrial when the prosecutor directly or indirectly refers to the failure of the defendant to testify in his own defense is subject to the harmless error analysis. State v. Jackson, 454 So.2d 116 (La.1984); State v. Moser, 588 So.2d 1243 (La.App. 1 Cir.1991), writ denied 594 So.2d 1314 (La.1992). Concluding that the prosecutor's remarks did not fall within the scope of La.C.Cr.P. Art. 770 because the comments were not direct references to the particular defendant's failure to take the witness stand, the court must be thoroughly convinced that the jury was influenced by the complained of remarks and that they contributed to the verdict in order for there to be reversible error. See State v. Morris, 404 So.2d 1186 (La.1981), concurring opinion 435 So.2d 423 (La.1983); State v. Johnson, 93-2092 (La.App. 6/30/94), 639 So.2d 1236; State v. Young, 615 So.2d 948 (La.App. 1 Cir.1993), writ denied 620 So.2d 873 (La.1993). The reviewing court should accord credit to good sense and fair mindedness of jurors who have heard the evidence. State v. Jarman, 445 So.2d 1184, 1188 (La. 1984); State v. Ondek, 584 So.2d 282, 297 (La.App. 1 Cir.1991), writ denied 586 So.2d 539 (La.1991).
In State v. Michel, 422 So.2d 1115, 1120-1121 (La.1982), during rebuttal the prosecutor, "after referring to defense counsel's statement indicating that he (defense counsel) knew that defendant was not guilty, stated, `If he knows ... he should have taken the witness stand.'" The Louisiana Supreme Court noted:
While the prosecutor's remarks referring to the integrity of defense counsel were inappropriate and bordered on reversible error, we do not consider that the jury was influenced by them or that they contributed to the verdict. Moreover, the remark that "[i]f he knows ... he should have taken the witness stand" clearly referred to defense counsel and not defendant. Hence, while an improper remark, it was not a prohibitive reference to the failure of defendant to testify in his own defense (La.Code Crim.P. art. 770(3)) nor was defendant prejudiced as a result thereof.... [Emphasis added.] Id.

In State v. Cureaux, 93-0838, p. 7 (La. App. 4 Cir. 10/27/94), 645 So.2d 1215, 1219, writ denied, 94-2899 (La. 3/24/95, 651 So.2d 287), this court found that:
Rather than intending to focus the jury's attention on the defendant's failure to testify..., the prosecutor was arguing to the jury that they could not conclude that reasonable doubt existed based solely on a denial of guilt by a defendant. The prosecution did not refer to the defendant ... but referred to defendants in general. The prosecutor stated: "... if that was reasonable doubt every time there is a trial the defendant could either take the stand or have a witness take the stand and say, `No, I didn't do it.'" The prosecutor referred to any trial and to any defendant whose trial strategy was to provide testimony to claim innocence. The prosecutor's comments were not an impermissible reference to the defendant's failure to testify....
In State v. Davis, 471 So.2d 310 (La.App. 4 Cir.1985), this court found that the error was indirect and harmless in view of the overwhelming evidence of the defendant's guilt. See also State v. Lamark, 584 So.2d 686 (La.App. 1 Cir.1991), writ denied 586 So.2d 566 (La.1991); State v. Moser, supra.
In the present case, any remark was indirect, and the majority of the panel is not thoroughly convinced that the jury was influenced by the remarks or that they contributed to the verdict. Any error was harmless.

ASSIGNMENT OF ERROR NUMBER 2
The defendant also alleges that the trial court erred in allowing the prosecutor to engage in an inflammatory closing argument which included the following comments:
... But what would Carnel say if he were here. What would Carnel Say? I wish I hadn't passed on Sixth street that night ... I would love to hold my son. I would love to continue my education, my work what I have tried to establish for myself, my faith. Those were the things that were important to him. But those were the things that got cut short that night.
*1099 The defendant asserts that the prosecution's argument has nothing to do with the defendant's guilt or innocence and is designed solely to inflame the passions of the jury.
The trial court prosecutor's closing remarks will not be considered reversible error unless the reviewing court is convinced that the statements were so inflammatory or prejudicial that they influenced or contributed to the guilty verdict. State v. DiLosa, 529 So.2d 14 (La.App. 5 Cir.1988), writ denied 538 So.2d 1010 (La.1989); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writs denied 94-0475 (La.4/4/94), 637 So.2d 450, & 94-1361 (La.11/4/94), 644 So.2d 1055.
In the present case any error was harmless as the majority of the panel is not convinced that the prosecutor's statements were so prejudicial that they influenced or contributed to the guilty verdict.

ASSIGNMENT OF ERROR NUMBER 3
The defendant also argues that the evidence was not sufficient to prove that the defendant knew a shooting would occur, and thus the State failed to carry its burden of proof to support a conviction for manslaughter.
The standard for an appellate review of the sufficiency of evidence to support a defendant's conviction was set forth in State v. Heck, 560 So.2d 611, 614-615 (La. App. 4 Cir.1990), writ denied 566 So.2d 395 (La.1990):
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979 (La.1986). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
La.R.S. 14:24 defines "principals" as: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime...." See State v. Brooks, 505 So.2d 714 (La.1987), certiorari denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Watson, 529 So.2d 94 (La. App. 4 Cir.1988), writ denied 535 So.2d 740 (1989). However, to support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. Brooks supra; State v. Spotville, 583 So.2d 602 (La.App. 4 Cir.1991), writ denied 585 So.2d 577 (La.1991).
The defendant was convicted of violating La.R.S. 14:31, manslaughter,[2] but had been charged with violating La.R.S. 14:30.1, second degree murder. This statute states in part that second degree murder is a killing without any intent to cause death or great bodily harm when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, including a drive-by shooting. La.R.S. *1100 30.1(A)(2).[3] Therefore, if the State proved that the defendant aided and abetted in the drive-by shooting of Carnel Preston, whether or not he had the specific intent to kill or cause great bodily harm to the victim, he can be convicted of second degree murder.
The term "drive-by shooting" as used in the first and second degree murder statutes is defined as "the discharge of a firearm from a motor vehicle on a public street or highway with the intent either to kill, cause harm to, or frighten another person." La.R.S. 14:37.1 (Emphasis added). Therefore, if the perpetrator intended only to frighten his victim but accidently kills him or another, the necessary elements of felony-murder have been proved. Similarly, the State was required only to prove that the defendant, as a principal to the drive-by shooting, had the intent to frighten.
In State v. Pierre, 93-0893 (La. 2/3/94), 631 So.2d 427 (La.1994), the Louisiana Supreme Court reversed the defendant's conviction. The defendant had been tried for second degree murder, as a specific intent crime, but the jury returned a responsive verdict of manslaughter. The victim, a thirteen-year old boy, had been beaten to death and there was also evidence that he had been raped. At trial, the State conceded that the defendant had not personally struck any of the blows on the defendant. Instead, the State argued that the defendant had been a principal to the crime. The evidence consisted of inculpatory statements made by the defendant and co-perpetrators which established that the defendant was one of the group generally present. None of the evidence placed the defendant inside the abandoned house where the victim was raped. One of the codefendant's statements indicated that the defendant was merely seated in the van while the victim was beaten to death. In reversing the conviction, the Supreme Court noted that the State was required to prove the defendant's intent to kill or inflict bodily harm on the victim because the defendant had been charged under La.R.S. 14:30.1(1). The Supreme Court noted that the State introduced "no direct or circumstantial evidence that the defendant counseled or procured the others to kill [the victim] or that he participated in the actual murder." Pierre, 631 So.2d at 429. The Supreme Court also noted that "[m]ere presence at the scene is not enough to `concern' an individual in the crime," citing State v. Schwander, 345 So.2d 1173 (La.1977). Id. Finally, the Court stated:
The due process standard of review in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), preserves the role of the jury as the factfinder in the case but it does not allow jurors "to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." State v. Mussall, 523 So.2d 1305, 1311 (La.1988) [quoting 2 C. Wright, Federal Practice & Procedure, Criminal 2d § 467 (2d ed. 1982)]; see also State v. Lubrano, 563 So.2d 847 (La.1990). A jury's finding that the accused aided and abetted in the commission of the crime therefore "cannot be `mere speculation based upon guilt by association.'" State v. Schwander, supra, 345 So.2d at 1175 [quoting State v. Williams, 310 So.2d 513, 515 (La.1975)].

Id., 631 So.2d at 429.
In State v. Smith, 26,661 (La.App. 2 Cir. 3/1/95), 651 So.2d 890, writ denied 95-0918 (La. 9/15/95), 660 So.2d 458, a murder prosecution arose from a drive-by shooting. However, at the time of the crime, "drive-by shooting" was not an underlying felony in La.R.S. 14:30.1.[4] Therefore, the defendants were charged and convicted of having specific intent to kill or inflict great bodily harm. The evidence showed that three cars with their lights off had driven by the shooting scene twice. On the second pass, shots were fired from the cars. Prior to the drive-by shooting, the defendants and others had been *1101 at a party at which someone, whose identity was never discovered, suggested that a drive-by should be perpetrated. The defendants on appeal made various arguments regarding insufficient evidence. The driver of one of the vehicles, Michael Gibson, argued that there was no evidence he was ever in possession of a weapon or knew that a shooting would occur. In rejecting this argument, the Second Circuit noted that: (1) Gibson was seen at the party; (2) he had driven a vehicle on the first pass by the shooting scene; and (3) he assumed the role of lead vehicle and readily turned off his lights when instructed to do so by someone in another vehicle. Furthermore, a back-seat passenger testified that he could see the gun in the hand of the front-seat passenger; the appellate court assumed that the driver Gibson must have also seen it. Lastly, the appellate court noted, "Gibson made no statement after the shooting as if he was surprised by the incident." State v. Smith, p. 14, 651 So.2d at 900.
In other cases, the driver of the "getaway" car has been found to be a principal to the felony committed by another. In State v. Bellamy, 599 So.2d 326 (La.App. 2 Cir.1992), writ denied, 605 So.2d 1089 (La.1992), the defendant made a statement wherein he admitted to being in the company of the robbers for several hours before the offense, was present at the offense, fled the scene with the robbers, but protested his innocence by denying that he knew that the other men were going to commit a robbery. The appellate court on review found that the jury could justifiably reject the defendant's protestation that he was unaware that a robbery was going to be committed.
Similarly, in State v. Joseph, 483 So.2d 1109, 1110 (La.App. 4 Cir.1986), this court noted that it was "well-established that the driver of the get-away car is a principal to the crime of armed robbery," citing State v. Antoine, 444 So.2d 334 (La.App. 1 Cir.1983). In Antoine, a single gunman entered a store, forced the victim outside, and took her jewelry. The victim observed the robber getting into a car driven by the defendant. The appellate court found the evidence sufficient to convict the defendant of armed robbery.
In the present case, the defendant turned the car around and stopped it during the shooting. In his statement, the defendant attempted to account for turning the car around by indicating he was afraid of Terrance Simon. While that statement explains why he turned the car around, it does not account for the testimony of Rashan Jones that the vehicle stopped. Furthermore, Jones' testimony on the fact that the car stopped was corroborated by the pretrial statement given by Keenan Ward. The jury could justifiably reject the defendant's attempt to exculpate himself in light of the evidence that he stopped the car.
In State v. Smith, supra, the prosecution successfully proved that the defendants had the specific intent to kill or inflict great bodily harm. In the present case, the State provided sufficient evidence that the defendant intended to participate in the frightening of the victim, and he was a principal in commission of the crime.

ASSIGNMENT OF ERROR NUMBER 4
Finally, the defendant contends that the thirty-three year sentence he received is excessive.
The defendant argues that he was only sixteen years old at the time of the crime and that he was a first offender but received a sentence only seven years less than the maximum. He further asserts that he was not the individual who did the shooting and that there was no evidence that he knew Terrance Simon was going to shoot or kill the victim.
Article I, § 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence may be reviewed for excessiveness even though it is well within statutory guidelines. La.C.Cr.P. art. 881.2; State v. Cann, 471 So.2d 701 (La.1985), State v. Clements, 94-2217 (La. App. 4 Cir. 11/16/95), 665 So.2d 137. The imposition of a sentence may be unconstitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless imposition of pain and suffering. State v. Brogdon, 457 So.2d 616 (La.1984), certiorari denied, Brogdon v. Louisiana, 471 US 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985). To insure *1102 adequate review by the appellate court, the record must indicate that the trial court considered factors set forth in the sentencing guidelines. La.C.Cr.P. art. 894.1.
In the present case, the trial court noted that it was aware of the fact that the defendant was only sixteen at the time of the crime, but noted that youth itself, while a factor, was "not enough for this Court to conclude that any lesser sentence would not be appropriate under the circumstances." The trial court noted other factors which it considered: (1) the defendant was a principal to the crime, which the court described as the wanton shooting of the victim; (2) the jury verdict of manslaughter reflected the reduced culpability of the defendant; (3) the trial court's belief that the defendant is "a menace to society" and should be removed from the streets of the City for a long period of time for the protection of others. The trial court further stated that it would not impose the maximum sentence because the defendant did not actually pull the trigger. The trial court adequately complied with La. C.Cr.P. art. 894.1 by stating both mitigating and aggravating factors.
Maximum sentences for manslaughter convictions have been affirmed in several cases even where the defendant had no prior convictions. See State v. Maxie, 594 So.2d 1072 (La.App. 3 Cir.1992), writ denied, 598 So.2d 372 (La.1992); State v. Smith, 520 So.2d 1252 (La.App. 5 Cir.1988), writ denied, 523 So.2d 1320 (La.1988); State v. King, 563 So.2d 449 (La.App. 1 Cir.1990), writ denied, 567 So.2d 610 (La.1990).
In the present case, the defendant was a principal to a drive-by shooting that resulted in the death of one person. The shooting occurred without any provocation. The trial court considered all mitigating factors.[5] The trial court did not abuse its discretion in sentencing the defendant to thirty-three years at hard labor.
Accordingly, the defendant's conviction and sentence are affirmed.
AFFIRMED.
WALTZER, J., dissents with reasons.
WALTZER, Judge, dissenting with written reasons.
In his first assignment of error, the appellant contends that the trial court erred when it allowed the prosecutor during closing argument to make a direct reference to the defendant's failure to testify.
LSA-C.Cr.P. art. 770 provides:
Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
The trial court is required to declare a mistrial when the prosecutor directly or indirectly refers to the defendant's failure to testify. However, a direct reference mandates a mistrial whereas an indirect reference permits the court to inquire into the remark's intended effect on the jury. State v. Johnson, 541 So.2d 818 (La.1989) appeal after remand 597 So.2d 79 (La.App. 2 Cir. 1992) writ denied 600 So.2d 658 (La.1992) cert. granted and judgment vacated on other grounds in Johnson v. Louisiana, 508 U.S. 958, 113 S.Ct. 2926, 124 L.Ed.2d 677 (1993), remanded 628 So.2d 278 (La.App. 4 Cir. 1993).
In State v. Fullilove, 389 So.2d 1282, 1283 (La.1980), the prosecutor stated:

*1103 "... That is why the evidence was not introduced. The State's case is clear and simple. I really cannot add any more. The only thing that I would like to tell you is that at every phase of these proceedings, this man has been afforded his constitutional right. He has been afforded the right not to take the stand. He has been afforded the right that he has an attorney appointed for him if he can't afford one. His constitutional rights"
The Louisiana Supreme Court held that the reference was a direct reference to the defendant's failure to testify. Thus, even though the reference may have been only for the purpose of enumerating the defendant's constitutional rights, mistrial was warranted.
In State v. Reed, 483 So.2d 1275, 1276 (La.App. 4 Cir.1986), this court reviewed the following statements in the prosecutor's closing argument:
"Now the presumption of innocence that the defendant's [sic] do not have to take the stand. William Riley did not take the stand and that is the way the law is and there is a good reason why the law is ..."
This court held that the reference was direct and that the trial court erred in failing to declare a mistrial.
In the present case, during rebuttal argument, the prosecutor stated:
Now during jury selection we talked a lot about the defendant's rights. We talked about the right that he had that he is presumed innocent at the outset. And we talked about the right that every defendant has that he doesn't have to take the stand in his own defense. And that can't be held against amount (sic). But what we didn't talk about were victim's rights. Victim's rights to be free from getting shot in the back
At this point, the defense counsel made an objection which was overruled by the trial court. The prosecutor continued with her argument as follows:
Of course, Carnel Preston can't take the stand, and it is not because of a Fifth Amendment privilege, he can't take the stand because he's dead.
The comments are direct references to the defendant's failure to testify. Under Fullilove, supra and Reed, supra the defendant's conviction should be reversed.
NOTES
[1] Simon proceeded to trial and was convicted of second degree murder. This court has affirmed. State v. Simon, unpub. (94-KA-2397 La.App. 4 Cir. 8/23/95), 658 So.2d 1342.
[2] Manslaughter is defined in pertinent part in La.R.S. 14:31 as (1) a homicide which would be either first degree or second degree murder, but the offense was committed in sudden passion; or (2) a homicide committed without any intent to cause death or great bodily harm when the offender is engaged in the perpetration of a felony not enumerated in the first degree or second degree murder statutes, or of any intentional misdemeanor directly affecting the person. There was no evidence in the present case of sudden passion. However, the defendant could appropriately have been convicted under the second definition if he was engaged in the intentional misdemeanor of assault (La.R.S. 14:36) or aggravated assault (La.R.S. 14:37). The State would still be required to prove that the defendant had the intent to place the victim in a reasonable apprehension of receiving a battery, under the definition of assault pursuant to La. R.S. 14:36 and an element of La.R.S. 14:37.1, the felony crime of assault by drive-by shooting.
[3] If the evidence supports a conviction for the crime charged, whether or not the evidence fits the elements of the responsive verdict, then the conviction shall be affirmed, as long as the defendant did not object to the inclusion of the responsive verdict. State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), certiorari denied 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). In the present case the defendant did not object to the responsive verdict.
[4] "Drive-by shooting" was added to La.R.S. 14:30.1 by a 1993 amendment.
[5] The sentencing transcript shows that the defendant was also set to go to trial in another murder case. The trial court stated that he would not consider that pending charge in sentencing.