# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 16-34

STATE OF LOUISIANA

VERSUS

DONTREZ T. BANKS a/k/a
DONTREZ BANKS

************

**APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, DOCKET NO. 81421, DIVISION B
HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE**

***********

**JAMES T. GENOVESE
JUDGE**

***********

Court composed of John D. Saunders, Billy H. Ezell, and James T. Genovese, Judges.

**AFFIRMED.**

**Edward J. Marquet
Louisiana Appellate Project
Post Office Box 53733
Lafayette, Louisiana 70505-3733
(337) 237-6841
COUNSEL FOR DEFENDANT/APPELLANT:**
    **Dontrez T. Banks**

**Asa A. Skinner, District Attorney**
**Thirtieth Judicial District**
**Terry W. Lambright, Assistant District Attorney**
**Post Office Box 1188**
**Leesville, Louisiana 71446**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Dontrez T. Banks, pled guilty to the reduced charge of manslaughter and to conspiracy to commit simple robbery, pursuant to a plea agreement, with a dismissal of an armed robbery charge. Defendant was sentenced to twenty-five years at hard labor on the conviction for manslaughter and three years at hard labor on the conviction for conspiracy to commit simple robbery, with the sentences to be served consecutively.

Defendant appeals, alleging that his twenty-five year manslaughter sentence is excessive. For the following reasons, we affirm Defendant's manslaughter sentence.

## FACTS AND PROCEDURAL HISTORY

Defendant and two co-defendants, Andre Porter and Joshua Griffin, went to the home of Jason Perry with the intent to rob him of drugs. A confrontation ensued, which resulted in Mr. Perry being stabbed several times. Mr. Perry died as a result of the stab wounds.

Defendant was indicted on one count of first degree murder of Jason Perry, a violation of La.R.S. 14:30, one count of criminal conspiracy to commit armed robbery, a violation of La.R.S. 14:26 and 14:64, or in the alternative, conspiracy to commit simple robbery, a violation of La.R.S. 14:26 and 14:65, and one count of armed robbery, a violation of La.R.S. 14:64. On October 3, 2011, the State informed Defendant in open court that it would not seek the death penalty in this case.

On September 5, 2012, pursuant to a plea agreement, Defendant pled guilty to the offense of manslaughter, a violation of La.R.S. 14:31, and conspiracy to commit simple robbery. The armed robbery charge was dismissed.

Defendant was sentenced on October 2, 2015, to twenty-five years at hard labor on the conviction for manslaughter and three years at hard labor on the conviction for conspiracy to commit simple robbery. The sentences were ordered to be served consecutively, for a total of twenty-eight years imprisonment, and with credit for time served. Defendant filed a Motion to Reconsider Sentence, which was denied without a hearing on October 8, 2015.

Defendant has perfected a timely appeal, wherein he asserts that the sentence of twenty-five years imposed on the conviction for manslaughter was excessive, considering the circumstances of his case.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant contends: "The trial judge imposed an excessive sentence of [twenty-five] years at [h]ard [l]abor against a [seventeen-]year[-]old juvenile with no criminal history and who testified against the most culpable co-defendant, Joshua Griffin, that resulted in a life sentence."

## DISCUSSION

Defendant argues that the sentence of twenty-five years imposed on his conviction for manslaughter was excessive, considering that he was only seventeen years old at the time of the incident, that he fully cooperated with the police, and that he testified at the trial of the co-defendant, who was the person who actually stabbed the victim.

2

This court has articulated the following standard regarding the review of excessive sentence claims:

> [Louisiana Constitution Article 1], § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, cert. *denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

Defendant was originally charged with first degree murder. First degree murder is defined as "the killing of a human being:"

> When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, assault by drive-by shooting first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.

La.R.S. 14:30(A)(1).

Whereas the State declined to pursue the death penalty in this case, the punishment for first degree murder was "life imprisonment at hard labor without benefit of parole, probation[,] or suspension of sentence." La.R.S. 14:30(C)(2). Defendant was also charged with armed robbery, with the pertinent punishment provision providing for imprisonment "for not less than ten years and for not more

3

than ninety-nine years, without benefit of parole, probation, or suspension of sentence." La.R.S. 14:64(B).

Defendant, however, pled guilty to the reduced charge of manslaughter, which provides for a range of imprisonment of not more than forty years at hard labor. La.R.S. 14:31(B). Defendant received twenty-five years at hard labor without any restriction on parole eligibility.

A sentencing hearing was held on October 2, 2015. Several people testified on Defendant's behalf. Lisa Johnson testified that she had just recently met Defendant and that he was helping coach her stepson's football team. She described Defendant as a kind, goodhearted, and compassionate man. Allen Chandler, whose oldest son and Defendant's brother were best friends, stated that Defendant had matured in the past few years. Clair Suske, the mother of Defendant's seven-month-old daughter, testified that she and Defendant had been living together for the past year. She stated that it would be an enormous economic hardship on her and the baby should Defendant go to prison. She further stated that Defendant is devoted to his daughter and has worked hard to help provide for them. Defendant's sister, Jasmine Harris, described how she and Defendant grew up together as children of a single mother who was in the army. She stated that Defendant helped her out at a homeless shelter she ran.

The administrator of BeauVer Christian Academy, Cheryl Zeno, testified as to how well Defendant did in his last year in high school. She spoke of how he helped with other troubled boys at the school. She believed that Defendant had accepted responsibility for what he had done regarding the victim's death. Latasha Berry, Defendant's mother, described how Defendant had matured and changed for the better as a result of the terrible mistake he made. Defendant testified and

4

expressed remorse for the victim's death, and he apologized to the family of the victim. He described himself as a typical teenager, who had a mischievous bent, and that he had made a bad decision when he was seventeen and followed the wrong people.

Finally, the victim's mother and brother testified. They spoke about how the loss of their son and brother has affected their lives.

Following the testimony, at the sentence hearing, the trial court ruled as follows:

> The facts are that on or about April the 12th, 2011, here in Vernon Parish, Louisiana, that Dontrez Banks, along with Joshua Griffin and Andre Porter, met and discussed going to the residence north of Rosepine here in Vernon Parish, Louisiana, where the victim, Jason Perry, lived for the purpose[] of committing a robbery. The robbery did occur wherein several items were taken from the victim[,] and an altercation ensued in the process of that [sic] whereby Mr. Banks, Mr. Griffin, and Mr. Porter and against Mr. Perry [sic]. Brass knuckles with a blade was used against the victim in the robbery and the altercation[,] which resulted in the death of Mr. Perry. Mr. Banks was actively involved in this altercation and robbery and the conspiracy to commit the robbery so much so to the extent that he received a cut on his body from a co-perpetrator, Mr. Griffin, who was the testimony [sic] of the only one who actually had a blade. There was testimony that Mr. Banks had brass knuckles. There's testimony at the trial of Mr. Griffin that Mr. Banks was also involved in the physical altercation as far as blows go. Up to this point and if you see the statements that have been given by Mr. Banks as well as Mr. Porter, both have given statements that have been self-serving up to this point and not taking responsibility for what they have done. They have sought to cover their tracks and to cover their rear-end, even on the testimony during the trial of Mr. Joshua Griffin. They basically both testified it wasn't them involved, it was the other two involved during that trial here in August of this year of Mr. Joshua Griffin. The recommendation was that he was to be sentenced after the trial of Mr. Joshua Griffin. There [were] no sentencing recommendations other than to run concurrent with one another and to ask for an 893 and that there be a bond set. Okay. There was harm caused to the victim and his family, both economically, emotionally[,] and everything else that's been caused. The family did expend quite a bit of money from the presentence investigation in relation to the funeral[,] and there is significant economic impact when someone is - - when somebody has been murdered. They went down there to

5

rob him of some drugs. There was a text message that was sent to him to get him out of his house. The defendant did - - was not under any strong provocation by the victim in this case. There [were] no substantial grounds that exist to tend to justify or excuse his conduct. He is single, he has a daughter, a seven month old, as testified here on the stand. He's in good health, he has a - - on the PSI there's one - - there was an undated PSI that was ordered. There is on 2/19/2014 . . . a careless operation and driving under suspension while he was on bond from this matter[,] and on 5/30/2014[,] there was a plea of guilty to careless operation and the other charge was dismissed. He has completed his highschool education as testified and as the documents provided by his counsel to the [c]ourt so show. The PSI indicates that there is no juvenile record. Juvenile, it says none indicated. Adult, it says none indicated under Probation and Parole record[,] and then the updated showed the careless operation and, also, none for detainers. But[,] the defendant is not likely to respond favorably to probationary treatment. There is an undue risk that during the period of any potential suspended sentence or probation that he would potentially commit a crime. The crime here is just too serious to think otherwise. He is in need of correctional treatment and custodial environment that can provide the most effective commitment to an institution. A lesser sentence would deprecate the seriousness of his offense[,] and, of course, the defendant pled guilty under Louisiana law, manslaughter is a crime of violence.

Defendant argues that he was only seventeen when the robbery and killing of the victim occurred. He notes that he willingly and truthfully testified at co-defendant Joshua Griffin's trial, which resulted in a life sentence for Mr. Griffin. He points out that he had no prior criminal history and that, in the three years between his guilty plea and his sentencing, he became a law abiding, family man. He states that "[t]here is little doubt that this [seventeen-]year[-]old juvenile was heavily influenced and corrupted by the older Joshua Griffin."

Defendant's appellate counsel argues that:

Our society and our courts have recognized that juveniles have lessened culpability and they are less deserving of the most severe penalties. Graham v. Florida, 560 U.S. 48 (2010); Roper v. Simmons, 543 U.S. 551 (2005); Miller v. Alabama, 567 U.S. ___; 132 S.Ct. 2455 (2012). The courts have noted that as compared to adults, juveniles lack maturity and an underdeveloped sense of responsibility

6

and are more vulnerable or susceptible to negative influences and outside pressures. Roper, 543 U.S. 569-570.

In *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, the fifth circuit noted three factors the appellate court should consider in reviewing a trial court's sentencing discretion, which are: the nature of the crime; the nature and background of the offender; and the sentence imposed for similar crimes by the same court and other courts.

The record before this court shows that the interviews of Defendant and Mr. Porter with the police indicated that the three men had been harassing the victim for several days prior to the incident. Defendant told the police that Mr. Griffin was upset because the victim was dating the mother of Mr. Griffin's two minor children. According to Defendant's version of the event, Mr. Porter and Mr. Griffin had gone to Mr. Perry's home the night before and broke out several of his windows with a baseball bat. Defendant claimed that because Mr. Porter's phone was out of minutes, he allowed Mr. Porter to use his phone to text the victim and lure him out of the house the evening of the killing. Mr. Griffin told the police that he, Mr. Porter, and Defendant attacked the victim. Defendant denied that he was aware of Mr. Griffin's intent and that he did not take an active role in the beating; however, Defendant, himself, was stabbed twice during the fray by Mr. Griffin. Defendant testified that he was regretful for what had occurred and wished that he could have done something at the time. However, when Defendant was confronted two days after the killing, he denied that he was even at the scene. Furthermore, his mother and her boyfriend vouched for him, stating that he was home the entire evening of the incident. Defendant did not admit he was with

7

Mr. Griffin and Mr. Porter until they gave him up. Still, Defendant continued to deny that he had any knowledge of what was to occur or that he participated in the occurrence.

In *State v. Wright*, 10-577 (La.App. 5 Cir. 2/15/11), 61 So.3d 88, *writ denied*, 11-560 (La. 9/30/11), 71 So.3d 283, the defendant, who was fifteen years old at the time and charged with second degree murder and armed robbery, was found guilty of manslaughter by a jury. The defendant received twenty-five years at hard labor on the conviction for manslaughter. He appealed the sentence as excessive because of his youth, asserting that there was no evidence that he shot the victim. While noting that the defendant did have an extensive juvenile criminal history, the fifth circuit did not find the sentence excessive under the circumstances. The fifth circuit looked at other similarly situated defendants, as follows:

> In a case similar to the instant one, *State v. Williams,* 34,359 (La.App. 2 Cir. 5/9/01), 786 So.2d 203, *writ denied,* 01-2275 (La.5/10/02), 815 So.2d 835, defendant was originally charged as a principal to a second degree murder which occurred during the course of an armed robbery. However, he was found guilty of the responsive verdict of manslaughter after a jury trial. The trial court sentenced defendant to 30 years at hard labor. On appeal, defendant argued that his 30-year sentence was excessive, noting that the trial court failed to give adequate weight to various factors, including his youth at the time of the offense, his lack of a felony record, the fact that his co-defendant was the leader/organizer of the robbery and the shooter, and the minimal evidence linking him to this crime. *Id*., 34,359 at 20, 786 So.2d at 216.

> The appellate court found that the 30-year sentence was not excessive. The court found that although defendant was only 16 at time of the offense and was the least culpable of the offenders, defendant had a significant juvenile criminal history, and he did not receive the maximum 40-year sentence. Further, the appellate court noted that although defendant denied any participation in the crimes, that claim was refuted by the evidence. The court stated that defendant was present at the planning of the robbery and during the commission of the robbery-homicide, and that he received part of the

robbery proceeds. The appellate court also stated that defendant received great lenience from the jury in light of the overwhelming evidence showing his guilt on the charged offenses of second degree murder and armed robbery. It concluded that the 30-year sentence did not shock the sense of justice when considered in light of the violent crimes committed. *State v. Williams*, 34,359 at 22-23, 786 So.2d at 217-18.

Likewise, in *State v. Bowman,* 95-667 (La.App. 4 Cir. 7/10/96), 677 So.2d 1094, *writ denied*, 96-2070 (La.1/31/97), 687 So.2d 400, defendant was indicted for second degree murder, but a jury convicted him of manslaughter. He was sentenced to 33 years at hard labor. On appeal, defendant contended his sentence was excessive, arguing that he was only 16 years old at the time of the crime and that he was a first offender but received a sentence of only seven years less than the maximum. *Id.*, 95-667 at 14, 677 So.2d at 1101. Defendant further asserted that he was not the individual who did the shooting and that there was no evidence that he knew his co-defendant was going to shoot or kill the victim. *Id.* The appellate court found that the trial court did not abuse its discretion in sentencing, noting that the defendant was a principal to a drive-by shooting that resulted in the death of one person, and that the shooting occurred without any provocation. *Id.*, 95-667 at 16, 677 So.2d at 1102.

In the instant case, we find that the trial judge did not abuse his discretion in imposing a 25-year sentence. We find that the trial judge gave a sufficient basis for the sentence, and the sentence is supported by the record. The evidence showed that defendant was present during the planning of the armed robbery, and that he provided the gun that was used to kill the victim, pretended to knock on the next-door neighbor's door as a set-up to the armed robbery, was present at the scene in the event the co-defendants needed his assistance, and ran back to the house with his co-defendants after the shooting, the same place where the robbery was planned. Further, the evidence showed that the victim did nothing to warrant being killed.

*Id*. at 107-08.

In the current case, Defendant received a significant benefit from pleading guilty to manslaughter. The evidence in the record of this case was such that it was highly probable that Defendant was facing life imprisonment for his participation as a principal in this offense. La.R.S. 14:24. As in the cases cited above, Defendant conspired to rob the victim, whose only misdeed was dating the mother of Mr. Griffin's two children. Defendant denied that he shared a portion of the

money taken from the pockets of the victim, but he admitted that he took a share of the marijuana which was also taken from the victim. At the sentencing hearing, Defendant stated he wished that he could have helped the victim; yet, he told the police that as he and his co-defendants were leaving, he saw the victim on the ground, crawling back towards his house, and he did nothing. The record indicated that at least an hour later, when the victim was found by his brother, he was still alive.

A sentence violates La.Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1. "A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." *State v. Weaver*, 01-467, p. 11 (La. 1/15/02), 805 So.2d 166, 174. We do not find that the punishment in this case shocks this court's sense of justice. Accordingly, we find that the trial court did not abuse its vast discretion when it sentenced Defendant to twenty-five years imprisonment at hard labor for his participation in this heinous offense.

## DISPOSITION

We affirm the trial court's twenty-five year sentence imposed upon Defendant as a result of his manslaughter conviction in this case.

**AFFIRMED.**

10