**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**24-592**

**STATE OF LOUISIANA**

**VERSUS**

**ANTONIO JACKSON**

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 116560-F
HONORABLE CHUCK R. WEST, DISTRICT JUDGE

**********

**WILBUR L. STILES**
**JUDGE**

**********

Court composed of Elizabeth A. Pickett, Wilbur L. Stiles, and Clayton Davis, Judges.

**AFFIRMED.**

**Trent Brignanc**
**Evangeline Parish District Attorney**
**13th Judicial District**
**Chauncey J. Hesnor**
**P. O. Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**600 Jefferson St., Ste. 903**
**Lafayette, LA 70501**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Antonio Jackson**

**STILES, Judge.**

Defendant, Antonio Jackson, pled guilty to the amended charge of manslaughter. He appeals his sentence of twenty-five years at hard labor. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Because Defendant pled guilty, the factual basis in the record is limited. The basic facts of the incident leading to the shooting of the victim, Julius Goudy, were established during a Continued Juvenile Custody Hearing and Probable Cause Hearing held on October 3, 2019. Defendant was sixteen years old at the time of the incident.

On October 2, 2019, Aliejah Fontenot was taking out the trash. Ms. Fontenot was Defendant's girlfriend and the mother of his child. Mr. Goudy approached Ms. Fontenot and started flirting with her, but she did not respond in kind. He said some vulgar things to Ms. Fontenot and the two began arguing, catching the attention of Keabreonna Doucet. Ms. Doucet walked over to Mr. Goudy and Ms. Fontenot. Mr. Goudy then said vulgar things to Ms. Doucet as well. Soon thereafter, Defendant's grandmother, Debra Jackson, approached and yelled at Mr. Goudy that he should not be talking to these young women this way. A fight ensued in front of Ms. Jackson's apartment, as shown in recovered surveillance footage taken from the apartment complex and described by Detective Steven Deville at the October 3, 2019 hearing:

> At this at this point [sic] Ms. uh Debra Jackson told me she approached Mr. Julius and told him that he shouldn't be talking to these young women this way. And then uh that turned to an argument between Mr. Julius and Ms. Debra.
>
> . . . .

[A]nd right here uh a physical altercation takes place and then as you can see Ms. Aleijah pushed him and Ms. Debra goes after him and then this altercation moves in front of her apartment. She grabs a bucket of beer cans and throws it at him. And he's on her sidewalk in front of her front door. And she now has a broom that she's swinging at him.

. . . .

[A]nd the fight continues. Then Ms. Debra and Julius is [sic] on the ground and there are some unknown individuals right here who participated in the fight. You see he's drug [sic] right there, he's uh he's getting beat pretty bad. He's on his hands and knees and then you see Antonio walk up right here and shoot him right in the back.

Prior to the shooting, after learning that Mr. Goudy had hit Ms. Fontenot and his grandmother, Defendant joined the fight against Mr. Goudy. He then ran back into the apartment, came back with a gun, and shot Mr. Goudy point blank in the back. A powder burn was left on Mr. Goudy's back, caused by the gun barrel being placed directly against the skin of his back. The bullet entered Mr. Goudy's upper right shoulder blade and burrowed into his jaw area, just beneath the tongue. After shooting Mr. Goudy, Defendant tucked the gun into his waistband and walked away.

On October 14, 2019, the State filed a bill of information charging Defendant with second degree murder, in violation of La.R.S. 14:30.1, illegal use of weapons or dangerous instrumentalities, in violation of La.R.S. 14:94, and illegal possession of a handgun by a juvenile, in violation of La.R.S. 14:95.8. On October 23, 2019, an Evangeline Parish Grand Jury indicted Defendant on the charge of second degree murder, in violation of La.R.S. 14:30.1. On December 14, 2023, Defendant pled guilty to the amended charge of manslaughter, in violation of La.R.S. 14:31. In exchange for his plea, the State dismissed the charges of illegal use of weapons or dangerous instrumentalities and illegal possession of a handgun by a juvenile. On May 23, 2024, the trial court sentenced Defendant to serve twenty-five years at hard labor, with credit for time served.

Defendant filed a motion to reconsider sentence, arguing that his sentence is constitutionally excessive. The trial court denied the motion.

Defendant has now appealed, asserting that his twenty-five-year sentence is constitutionally excessive for a sixteen-year-old child who was defending his grandmother after she was physically attacked by a younger male.

## DISCUSSION

### *Errors Patent*

After reviewing the record in accordance with La.Code Crim.P. art. 920, we find no errors patent.

### *Assignment of Error*

In his sole assignment of error, Defendant contends that his twenty-five-year sentence is constitutionally excessive since he was sixteen years old at the time he shot the victim. Defendant submits that he was acting in a stressful situation in which the victim had instigated a verbal and physical argument with Defendant's grandmother and two other young women. He asserts that he was young and inexperienced, and his ability to cope was underdeveloped.

The trial court noted during sentencing that if Defendant had not pled guilty to manslaughter, he would have faced a far greater sentence for second degree murder than the forty-year maximum sentence for manslaughter. A conviction of second degree murder alone could have brought Defendant life imprisonment, not to mention the additional sentences from the other two charges ultimately dismissed by the State. Thus, Defendant received a considerable benefit for entering a plea of guilty.

Defendant nonetheless contends that this benefit was minimal "because an average jury would not have agreed with the State's charge of second-degree murder

3

had this case gone to trial." Defendant believes that manslaughter would have most likely been the outcome of a trial, and thus, when deciding on a sentence, the trial court should have considered that Defendant pled guilty to the crime he was factually guilty of, thereby sparing the State and Mr. Goudy's family a trial.

Defendant further argues that there were clear mitigating facts in this case, reasserting the arguments made in his motion to reconsider sentence: his age and lack of maturity; he acted under strong provocation; the victim facilitated the commission of the offense by attacking members of Defendant's family; and he has attempted to better himself while incarcerated. Defendant maintains that it was "[a]n impulsive decision by a 16-year-old child who saw a young man physically and verbally fighting with his grandmother on her front porch[,]" and that he never intended to kill Mr. Goudy.

Louisiana courts have laid out the following guidelines regarding the review of a sentence on a claim of constitutional excessiveness:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The

4

relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotto*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06

(alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

The possible maximum sentence for a conviction of manslaughter is forty years at hard labor. La.R.S. 14:31(B). Defendant received twenty-five years at hard labor, within the mid-range of the possible sentence. When imposing his sentence, the trial court stated the following:

> The Court has carefully studied the pre-sentence report, the record if [sic] prior offenses, factors in mitigation as well as aggravation present by both the defendant and the State of Louisiana. The Court has considered these matter [sic] was well [sic] as the nature of the present offense in light of the provisions of Article - - Code of Criminal Procedure Article 894.1 and the Court makes the following findings regarding sentencings. There is no issue Mr. Jackson was born on January 5, 2003. The crime was committed on October 2, 2019. Mr. Jackson was therefore sixteen years old at the time of the offense. The record indicates that the victim was involved in an altercation with three women including the defendant's grandmother at which time several

community members had intervened to restrain the victim. While the victim was on the ground, the defendant came out the house and struck the victim with a gun and according to the defendant the gun went off killing the victim. Imprisonment must be imposed if there is, A, an undue risk of commission of another crime. Correction treatment would be most effective in an institution. Or C, a lesser sentence will deprecate the seriousness of the crime. Mr. Jackson has plead [sic] guilty to a serious crime. Total suspension of sentence would deprecate the seriousness of that crime. Manslaughter particularly puts other persons at risk and has resulted in the death of a human being therefore I [sic] cannot be taken lightly. For that reason, imprisonment for a period of time is warranted. In mitigation the Court finds that Mr. Jackson was sixteen years old at the time of the offense and that the situation you were confronted with was volatile. In aggravation the Court finds that the victim was retrained [sic] at the time and therefore posed no danger to anyone.

The trial court then reviewed several cases in which the defendants were convicted of and sentenced for manslaughter before concluding:

> In this particular case Mr. Jackson was originally charged with second degree murder, illegal use of a weapon or dangerous instrumentality, and illegal possession of a handgun by a juvenile. On December 14, 2023, uh the State moved to amend the bill of information, they amended the charge from second degree murder to manslaughter at which time Mr. Jackson plead [sic] to that charge. The State then moved to nolle pros the remaining charges which motion was granted. Therefore, similar to the prior jurisprudence, Mr. Jackson has received the benefit of a reduced plea.

In *State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied sub. nom State ex rel. Matthew v. State*, 08-1664 (La. 4/24/09), 7 So.3d 1193, the defendant was initially charged with second degree murder and unauthorized use of a motor vehicle. He pled guilty to the amended charges of manslaughter and aggravated battery, receiving thirty-five years for manslaughter and seven years for aggravated battery. This court upheld his sentences, stating:

> We note that the defendant was initially charged with second degree murder which carried a sentence of "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." By pleading guilty to manslaughter, the defendant greatly reduced his sentencing exposure. Furthermore, he did not receive the maximum sentence for manslaughter.

*Id*. at 997.

Additionally, in *State v. Banks*, 16-34 (La.App. 3 Cir. 6/1/16), 194 So.3d 1224, this court upheld a twenty-five-year sentence for manslaughter imposed on a defendant who was seventeen years old when he and his friend committed a drug robbery which resulted in the friend stabbing the victim multiple times, fatally wounding him. Though the defendant was originally charged with first degree murder, conspiracy to commit armed robbery or in the alternative simple robbery, and armed robbery, he pled guilty to the reduced charge of manslaughter and conspiracy to commit simple robbery. The State dismissed the armed robbery charge. When affirming the sentence, this court noted:

> In the current case, Defendant received a significant benefit from pleading guilty to manslaughter. The evidence in the record of this case was such that it was highly probable that Defendant was facing life imprisonment for his participation as a principal in this offense.

*Id*. at 1231.

Turning to the facts of the case before us, we find that though Defendant was only sixteen, and though the situation he was in was certainly stressful since it was his loved ones who were being attacked, Defendant did not demonstrate the impulsiveness of an inexperienced sixteen-year-old. The record shows that Defendant stopped fighting the victim, went inside his grandmother's apartment, grabbed a gun, and returned to shoot the victim point blank in the back. Defendant then put the gun in his waistband and walked away. The record does not support Defendant's claim that a jury would have likely found him not guilty of second degree murder.

We look to this court's decision in *State v. Guillory*, 16-237 (La.App. 3 Cir. 11/2/16), 206 So.3d 1153, *writ denied*, 16-2186 (La. 9/22/17), 227 So.3d 823,

wherein the defendant was convicted by a jury of second degree murder. He appealed, arguing, in part, that the evidence was insufficient to establish that he had the specific intent to kill the victim and only supported a conviction for manslaughter. This court affirmed the defendant's conviction of second degree murder, stating the following:

> Mr. Guillory argues that he acted on impulse and that the circumstances surrounding the death of Mr. Boutte indicate that the offense was committed in sudden passion or the heat of blood immediately caused by provocation sufficient to deprive a man of his self-control and cool reflection. Mr. Guillory and Mr. Boutte had been arguing throughout the day through text messages until Mr. Boutte arrived at Mr. Guillory's trailer wherein a physical confrontation ensued. While the testimony establishes that there was a fist fight, the circumstances were not nearly volatile enough to warrant a reduction of the charge of second degree murder to manslaughter. The fist fight had already terminated before the shooting occurred. Additionally, an argument alone is not "sufficient provocation in order to reduce a murder charge to manslaughter." *State v. Miller*, 98-642, p. 10 (La.App. 3 Cir. 10/28/98), 720 So.2d 829, 834, *writ denied*, 98-3119 (La. 5/14/99), 741 So.2d 659. Family members were attempting to calm and separate the two men. Furthermore, Mr. Guillory walked away from Mr. Boutte and retrieved a gun from his bedroom or a box in the hallway, and then walked back into the living room. Following the shooting, Mr. Guillory appeared calm and stood talking to people until police arrived. He did not exhibit the behavior of someone who had just shot his girlfriend's stepfather in a sudden passion or heat of blood.

*Guillory*, 206 at 1156-57. The circumstances surrounding the shooting in *Guillory* are similar to the circumstances which led to Defendant shooting Mr. Goudy. Thus, we find that a jury could have very well found Defendant guilty of second degree murder, resulting in a life sentence.

As this court noted in both *Matthew*, 983 So.2d 994, and *Banks*, 194 So.3d 1224, Defendant received a significant benefit by pleading guilty to manslaughter, thereby removing the possibility of life in prison. Furthermore, the record shows that the trial court considered this benefit as well as other mitigating evidence when

8

sentencing Defendant to twenty-five years, fifteen years less than the maximum sentence of forty years.

Consequently, we find that the trial court did not abuse its vast discretion in sentencing Defendant to twenty-five years at hard labor, nor is the sentence so excessive as to qualify as cruel and unusual punishment.

## DECREE

We affirm Defendant's sentence of twenty-five years at hard labor.

**AFFIRMED.**